|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                      Plaintiff,<br><br>v.<br><br>DAVID JACOB SAIS,<br><br>                                      Defendant. | Case No.: 22-CR-2456-GPC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNTS TWO AND THREE OF THE INDICTMENT**<br><br>**[ECF No. 31]** |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

On April 21, 2023, Defendant Sais ("Defendant" or "Sais") filed this Motion to Dismiss Counts Two and Three of the Indictment under the Second Amendment. ECF No. 31. On May 6, 2023, the Government filed a Response in Opposition. ECF No. 46. A hearing was held on May 17, 2023. For the reasons below, the Court **DENIES** Defendant's Motion.

## BACKGROUND

Defendant moves to dismiss count two, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and count three, felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1), of the Indictment. Under the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v.*

1

*Bruen*, 142 S. Ct. 2111, 2126 (2022), to determine if a statute violates the Second Amendment, a court should: (1) determine whether the Second Amendment's "plain text" covers the individual's challenged conduct; and (2) if the plain text of the Second Amendment covers the individual's conduct, the regulation is valid only if the government shows the regulation is "consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). At a high level, Defendant argues that counts two and three "allege that Mr. Sais possessed a handgun in public, which is conduct covered by the Second Amendment's plain text" and that the Government has failed to show a historical tradition regulating his alleged possession of a handgun. ECF No. 31 at 7.[1]

Although *Bruen* does not expressly overrule *District of Columbia v. Heller*, 554 U.S. 570 (2008), and in fact explicitly reiterates its consistency[2] with the *Heller* decision, Defendant argues *Bruen* abrogated all case law[3] that relied on the "presumptively lawful" regulations first identified in *Heller*, including regulations restricting firearm possession by felons. *Id.* at 11-14 (citing *District of Columbia v. Heller*, 554 U.S. 570, 626-27

---

[1] Page citations refer to CM/ECF pagination.

[2] Justice Thomas's majority opinion at the outset notes, "[w]e . . . now hold, **consistent with *Heller* and *McDonald***, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122 (emphasis added). The *Bruen* decision reiterates numerous times that its holding is "in keeping with *Heller*." *See id.*; *id.* at 2126; *id.* at 2129 (stating "[i]n sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach"). The Court viewed *Bruen* as an avenue to elucidate *Heller*'s meaning and to reign in a two-step test developed in the Courts of Appeals, which the Court found "one step too many." *Id.* at 2127. Specifically, the *Bruen* Court disagreed with "means-end scrutiny in the Second Amendment context." *Id.*

[3] Specifically, the Ninth Circuit in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) held § 922(g)(1) was constitutional and in *United States v. Potter*, 630 F.3d 1260 (9th Cir. 2011) held § 924(c)(1)(A) was constitutional.

(2008)). *Heller* stated it did "not undertake an exhaustive historical analysis [] of the full scope of the Second Amendment" and that there would "be time enough to expound upon the historical justifications for the [presumptively lawful] exceptions" the Court identified. *Heller*, 554 U.S. at 635. According to Sais, *Bruen* was exactly this "exhaustive historical analysis" of the New York state licensing regime and that all courts post-*Bruen* should perform equivalent analysis for any challenged firearm regulation. ECF No. 31 at 13. Thus, Defendant asks this Court to not rely on *Heller*'s "presumptively lawful" list of regulations and instead conduct new analysis which "look[s] to the Second Amendment's plain text or historical tradition." *Id.* at 14.

Under the *Bruen* analysis, Defendant argues his conduct falls within the plain text of the Second Amendment. *Id.* Sais argues he is part of the "people" the Second Amendment protects. *Id.* He cites to Judge Barrett's dissent in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) for the proposition that felons are not "categorically excluded from our national community." *Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019) (Barrett, J., dissenting), *overruled on other grounds by Bruen*, 142 S. Ct. 2111 (2022). Sais states the plain text protects his "course of conduct" because counts two and three "rest solely on the *possession* of a gun," and the Second Amendment protects an individual's right to "possess and carry weapons in case of confrontation." ECF No. 31 at 15 (emphasis in original) (quoting *Bruen*, 142 S. Ct. at 2136).

As to *Bruen*'s second step, Sais argues the Government cannot show these modern-day regulations are "distinctly similar"[4] to historical regulations because (1) historical

---

[4] The *Bruen* Court stated that "[w]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century," the Court's inquiry is whether a "distinctly similar historical regulation address[ed] the problem." *Bruen*, 142 S. Ct. at 2131. However, if a law regulates "unprecedented societal concerns," the Court's historical inquiry should "involve reasoning by analogy," and a Court need only find that the historical regulation and present-day regulation are "relevantly similar." *Id.* at 2132-

3

regulations required an individualized assessment of a person's threat to society and not all people with a present-day felony conviction are violent; and (2) even those individuals historically deemed violent were still able to possess a weapon for self-defense purposes. *Id.* at 16-17. Sais also argues there is little evidence of a historical practice of prohibiting gun possession in furtherance of drug sales or any "distinctly similar" illegal commercial activity. *Id.* at 21.

The Government opposes. The Government argues *Bruen* uses the term "law-abiding" 14 times in the majority opinion and describes the Second Amendment right as a right of "ordinary, law-abiding citizens." ECF No. 46 at 10 (citing *Bruen*, 142 S. Ct. at 2122, 2125, 2131, 2133-34, 2135 n.8, 2138, 2150, 2156). Justice Alito's concurrence states that the *Bruen* holding "decides nothing about who may lawfully possess a firearm." *Id.* at 10-11 (quoting *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring)). Justice Kavanaugh's concurrence states that "'[n]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Id.* at 11 (quoting *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring)). The Government argues Sais wants this Court to "ignore—or second-guess—the Supreme Court's repeated use of that [law-abiding] qualifier unless the government can prove that the Supreme Court meant what it said" via historical analysis. *Id.* The Government argues *Bruen* does not abrogate Ninth Circuit precedent finding the statutes at issue constitutional, and thus historical analysis is unnecessary. *Id.* at 18.

---

33. Defendant argues the problems § 922(g)(1) and § 924(c)(1)(A) seek to address are "general societal problem[s]" that have persisted since the 18th century, and thus the Government must identify "distinctly similar historical regulation." ECF No. 31 at 16. Because this Court finds historical analysis is not required in this case for the reasons discussed below, the Court does not answer whether the problems of felons possessing guns or the possession of guns in furtherance of drug trafficking constitute persistent, general societal problems or concerns of more recent vintage.

## DISCUSSION

The Court finds *Bruen* did not abrogate Ninth Circuit case law holding both § 922(g)(1) and § 924(c)(1)(A) constitutional, and thus this Court is bound by prior precedent to uphold Sais's Indictment as to counts two and three. Defendant argues that *Bruen*'s mode of analysis is "clearly irreconcilable" with previous Ninth Circuit holdings in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) (§ 922(g)(1)), and *United States v. Potter*, 630 F.3d 1260 (9th Cir. 2011) (§ 924(c)(1)(A)), because these decisions did not undertake a full historical analysis. ECF No. 31 at 12. Defendant urges this Court to find that "*Heller*'s preliminary list of exceptions do not bind future courts or prevent them from conducting a full historical review" and to hold that § 922(g)(1) and § 924(c)(1)(A) are not supported by historical tradition. *Id* at 13.

Although it is true the *Bruen* Court provided a new, "revamped" two-step test for Second Amendment challenges, the Court emphasized its primary intent was to abolish "means-end scrutiny" in the Second Amendment context and instead guide lower courts with a test grounded in the text and history of the Second Amendment. *Bruen*, 142 S. Ct. at 2126. Neither *Vongxay* nor *Potter* relied on means-end scrutiny to uphold the constitutionality of their respective laws. *Vongxay* relied on *Heller*'s "presumptively lawful" exceptions and stated that "felons are categorically different from the individuals who have a fundamental right to bear arms . . . ." *Vongxay*, 594 F.3d at 1115. *Potter* similarly did not engage in means-end scrutiny and found that "the [*Heller*] Court made clear that its holding concerned the *lawful* possession and use of a firearm," clearly drug trafficking is not a lawful activity. *Potter*, 630 F.3d at 1261 (emphasis in original).

*Bruen* did not undermine, and in fact reaffirmed, this threshold question—whether the law at issue affects an "ordinary, law-abiding citizen" engaging in lawful activities. *Bruen*, 142 S. Ct. at 2122. Defendant collapses the *Bruen* test into essentially one question—whether historical tradition supports the regulation—and disregards nearly

everything else in the decision. Contrary to Sais's argument, courts post-*Bruen* need not engage in historical analysis each time a Second Amendment challenge is brought. Indeed, historical analysis is only the second, and last, step of *Bruen*'s two-step test. Further, the Court agrees with the Government and declines to undertake historical analysis to determine if the *Bruen* Court "meant what it said." ECF No. 46 at 11. The Court did not instruct lower courts to find historical support to justify each phrase in the *Bruen* decision. This Court can have faith that *Bruen* means what it says. Accordingly, the Court finds *Bruen*'s two-part test is not applicable unless the Court first finds the Second Amendment right of law-abiding individuals engaged in lawful activities is infringed.

This finding is further supported by the fact that "presumptively lawful" regulations are not presumptively lawful under *Heller* because they withstand means-end scrutiny, but rather the *Heller* Court stated these regulations were presumptively lawful because they were "longstanding," i.e., supported by historical tradition. *Heller*, 554 U.S. at 626. The *Heller* Court identified presumptive exceptions after analyzing cases and commentary "[f]rom Blackstone through the 19th-century . . . ." *Id.* at 626. Thus, *Bruen*'s disagreement with means-end scrutiny in the Second Amendment context does not extend to this portion of *Heller*, or post-*Heller* case law relying on this portion of *Heller*. As such, the Court finds Defendant has not demonstrated to this Court why it should ignore settled Ninth Circuit law.

## CONCLUSION

In sum, the Court does not find that *Bruen*'s mode of analysis or its holding is irreconcilable with Ninth Circuit decisions upholding the constitutionality of the challenged statutes. Accordingly, this Court is bound by Ninth Circuit precedent, and **DENIES** Mr. Sais's Motion to Dismiss counts two and three of the Indictment.

**IT IS SO ORDERED.**

1 | Dated: May 17, 2023

Hon. Gonzalo P. Curiel
United States District Judge